# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**JIMMIE W. NATIONS**                                                                                   **PLAINTIFF**

**V.**                                                              **CAUSE NO. 3:13-CV-690-CWR-FKB**

**JACKSON PUBLIC SCHOOLS, ET Al.**                                                            **DEFENDANTS**

## ORDER

Before the Court is the defendants' motion for summary judgment. Docket No. 49. After considering the evidence, arguments, and applicable law, the motion will be granted.

### I.     Factual and Procedural History

From 1990 to 2012, Jimmie Nations worked as a "Supervisor III" carpenter for Jackson Public Schools. In May 2012, he was informed that his position was being eliminated due to a lack of funding and restructuring. He was terminated the next month.

Nations, who is white, filed this lawsuit alleging that JPS engaged in racial discrimination by not terminating similarly-situated non-white employees.[1] He also alleged that his termination was retaliatory, as he had previously complained about misconduct of African-American employees and currently is a plaintiff in a "comp time" suit against JPS. Nations' claims were brought pursuant to Title VII of the Civil Rights Act of 1964.

After discovery, this motion followed.

### II.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in

---

[1] Nations' theory later changed. He now contends that the non-white employees retained in the restructuring were less qualified than him.

the record showing a fact dispute. *Id.* at 56(c)(1); *Tran Enterprises, LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2010). "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quotation marks and citation omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). "Although we examine the record in the light most favorable to the [non-movants], we do not do so in bits and pieces, but as a whole." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997) (affirming summary judgment in reduction in force case).

## III. Discussion

### A. Race Discrimination

The familiar *McDonnell Douglas* burden-shifting framework applies to Title VII race discrimination claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To make out a prima facie case of race discrimination, the plaintiff must show that he is a member of a protected class, was qualified for the position, suffered an adverse employment action, and was replaced by someone outside his protected class. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). If he does so, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for" the adverse employment action. *Id.* (citation omitted). If the employer satisfies that burden of production, the plaintiff must then prove that either the employer's reason is false (and therefore is a pretext for discrimination) or that the employer's reason is true but that race discrimination was a motivating factor for the adverse employment action. *Id.*

1. **Prima Facie Case**

JPS argues that Nations' prima facie case fails because he cannot prove that a non-white employee replaced him. No one replaced Nations, it says – his position was eliminated.

The Title VII analysis is more flexible than JPS recognizes. *See McDonnell Douglas*, 411 U.S. at 802 n.13 ("the specification above of the prima facie proof required from [plaintiffs] is not necessarily applicable in every respect to differing factual situations"). The Fifth Circuit, in fact, has specifically "caution[ed] district courts against applying the four-part, *prima facie* case test too mechanically." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (citation omitted). So-called "reduction in force" cases like this one show how a mechanical application of the standard can be hazardous, "as reduction-case plaintiffs are simply laid off and thus are incapable of proving the fourth *McDonnell Douglas* prong." *Thomas v. Exxon, U.S.A.*, 943 F. Supp. 751, 759 (S.D. Tex. 1996).

It is for that reason that the Fifth Circuit has modified the fourth prong in reduction in force cases to require the plaintiff to "produc[e] evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Williams v. Gen. Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981). (Even then, after articulating this standard the court "hastily add[ed] . . . that these requirements are not etched in granite and they do not beckon fanatic adherence." *Id.* at 129 n.12.) The *Williams* standard arguably "eased" the burden on plaintiffs by allowing them "to establish a prima facie case through any type of circumstantial evidence" that employees outside their protected class were treated more favorably. *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 643 (5th Cir. 1985). This "more favorable" inquiry appears to be a relatively common alternate means of making a prima facie case. *See Thomas*, 943 F. Supp. at 758 (substituting the fourth

prong of the prima facie case with whether "employees outside the protected class were treated more favorably").

Accordingly, where the plaintiff alleges that he was reorganized out of his job due to discrimination, the fourth element of the prima facie case asks whether similarly-situated employees outside of the plaintiff's protected class were treated more favorably than he.

It is undisputed that Nations was terminated while a non-white Supervisor III carpenter named T.J. Thompson was retained. That is more favorable treatment sufficient to meet this element of Nations' prima facie case.

## 2. Legitimate, Non-Discriminatory Reason

There are two kinds of reasons at play here: those JPS gave for Nations' termination, and those JPS gave for the retention of Thompson.

As to the first, JPS says it terminated Nations because of a lack of funding and restructuring. Regarding the second, JPS contends that it retained Thompson because he had slightly more supervisory experience than Nations.

Either reason alone is sufficient to satisfy JPS's burden of production. *See E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) ("a reduction in force . . . is itself a legitimate, nondiscriminatory reason for discharge").

## 3. Pretext

At this step,

> the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. . . . The "rare" instances in which a showing of pretext is insufficient to establish discrimination are (1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue,

and there was abundant and uncontroverted evidence that no discrimination occurred.

*Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quotation marks and citations omitted). Nations has failed to meet this standard.

Nations has not rebutted each of JPS's nondiscriminatory reasons. He concedes that Thompson had slightly more supervisory experience than he.[2] JPS's use of such an objective, race-neutral criterion for its decision is fatal to Nations' claim, since summary judgment is appropriate when reductions in force are based on "objective criteria." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004); *see also Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 226 (5th Cir. 2001) (affirming judgment for employer where plaintiff "failed to proffer evidence rebutting the second reason" for her termination).

Nations also does not challenge evidence that JPS was experiencing a funding shortfall and going through a restructuring. *See* Docket No. 52-3, at 9-10. He was personally aware of the funding shortfall – he submitted two budgets proposing to reduce costs in his and other departments – and it is undisputed that 87 other employees were terminated at the same time he was let go. *Id.* at 22. As a result, all of JPS's reasons for his termination are unchallenged.

Nations' principal argument against summary judgment is that JPS's lack of funding, while true, did not require *him* to be terminated. Of the two proposed budgets he claims he submitted to a JPS supervisor, one would have made cuts without requiring any terminations, while the other would have resulted in the termination of an unknown number of paint department employees. At one point, in fact, Nations "inform[ed] the paint department employees that their positions were eliminated," before that "order" was quickly rescinded. Docket No. 52-5, at 2.

---

[2] Thompson previously supervised Nations. Docket No. 50-6, at 2.

5

Nations' evidentiary support for his claim comes from the deposition of JPS's Executive Director of Facilities Fred Davis, who testified that he proposed this second budget to JPS higher-ups, including Deputy Superintendent Wilbur Walters. Docket No. 52-4, at 11-12. That proposal ultimately "didn't go through." *Id.* at 11. Nations says that there is a fact dispute between Davis and Walters' testimony as to why that budget did not go through. Walters, however, does not know why the second budget was not adopted. Docket No. 52-3, at 13. That is neither a fact dispute nor a fact dispute suggestive of racial discrimination.

Nations also says he was initially promised the ability to apply for the remaining position and compete against Thompson. Davis said he made that recommendation to JPS's Chief Financial Officer, *see* Docket No. 52-4, at 11, 33, and Walters did not know why that did not occur. Docket No. 52-3, at 16. By itself, though, denying terminated employees the ability to reapply for a remaining position is not race discrimination. Nations has not pointed to evidence that non-white employees facing termination in other departments were permitted to compete for a remaining position. It is speculation that JPS did not adopt Davis's recommendation because of race.

Even if these grievances were material, there is no evidence that the ultimate decision-maker engaged in discrimination. *See Roberson*, 373 F.3d at 653 (affirming summary judgment where the plaintiff "offer[ed] no evidence that . . . the ultimate decision maker[] relied on impermissible criteria when creating the reduction-in-force list"). The ultimate decision-maker in this case was then-Interim Superintendent Jayne Sargent. Docket No. 52-3, at 8. According to Walters, although Davis initially proposed terminating Thompson, Nations, and another similarly-situated employee, Davis told Dr. Sargent in a meeting that he "would love to keep one of those positions . . . it wouldn't make any difference which one, I just need one." Docket No.

52-3, at 14. Dr. Sargent asked Davis who he would keep; Davis replied that it didn't matter. *Id.* When she pressed him for information that would help make the decision, Davis said that Thompson had been supervisor for longer. *Id.* at 15. Dr. Sargent accepted that criterion and made the decision to terminate Nations and the third employee. *Id.* Said Walters, "[t]hat's the only reason that she did it." *Id.* Nations' claim that his termination was motivated by race is thus belied by the evidence of Dr. Sargent's involvement. His personal belief that race discrimination had to have occurred is not enough to survive step three. *See Hervey v. Mississippi Dep't of Educ.*, 404 F. App'x 865, 870 (5th Cir. 2010) ("subjective beliefs of discrimination cannot be the basis for judicial relief").

Finally, Nations objects to JPS's submission of evidence showing that a non-white supervisor was also terminated, via non-renewal, due to funding shortfalls and restructuring. That evidence is used to rebut Nations' assertion that only white supervisors were let go. Nations' argument is unavailing because the evidence of the non-white supervisor's termination was brought up before the close of discovery in a deposition, Docket No. 52-3, at 39, and he has provided no basis on which to distinguish that employee's non-renewal from his termination.

This matter highlights some of the perils of reduction in force cases. Any employee let go in a force-reduction can type out an affidavit *from himself* stating that a revised budget would have avoided the need for *his* layoff if cuts were made elsewhere. But such an affidavit is not evidence of race discrimination. At the same time, the employer necessarily will let some people go, who will be aggrieved and consider pursuing litigation. Had JPS fired the painters instead of Nations, for example, they could have sued complaining of JPS's decision to adopt a carpenter's proposal to save his job over theirs. These are perhaps two reasons why the Fifth Circuit emphasizes the use of objective criteria in force-reduction cases.

Here, the undisputed evidence shows that JPS's Interim Superintendent used supervisory experience as the objective criterion for retaining Thompson and terminating Nations. That is sufficient to warrant summary judgment in JPS's favor. *See Laxton*, 333 F.3d at 578; *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000) ("On this record, [the plaintiff] has failed to meet his burden of producing any evidence of discrimination sufficient to survive summary judgment, and his evidence to rebut the non-discriminatory reasons offered by [the defendant] is not so persuasive so as to support an inference that the real reason was discrimination.").

**B.     Retaliation**

The legal framework for Title VII retaliation cases is similar to that used in race discrimination matters:

> To set out a prima facie case of Title VII retaliation, a plaintiff must show (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation.

*Davis v. Fort Bend Cnty.*, 765 F.3d 480, 489-90 (5th Cir. 2014) (quotation marks and citations omitted). "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e–3(a)).

Nations' prima facie case of retaliation fails because he has not pointed to any evidence that he engaged in activity protected by Title VII or that there was a causal link between any

8

protected activity and his termination. His last-minute attempt to recast this claim as one brought under the Fair Labor Standards Act also fails. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citation omitted).

Accordingly, the retaliation claim will be dismissed.

## IV. Conclusion

The motion is granted. A separate Final Judgment will issue this day.

**SO ORDERED**, this the 21st day of April, 2015.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE